UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DREAMCATCHER SOFTWARE DEVELOPMENT, LLC,<br><br>PLAINTIFF<br><br>VS.<br><br>POP WARNER LITTLE SCHOLARS, INC., JON BUTLER, NEIL D. DRYBURGH, JOHN C. TRIMBACH, TROY A. BENSON, BENSON/TRIMBACH, INC., INTERACTIVE PLANET, INC. AND FRONTLINE INTERACTIVE, LLC,<br><br>DEFENDANTS | CIVIL ACTION<br>NO. 3:01-CV-808 (AVC)<br><br><br><br>NOVEMBER 19, 2003 |

### PLAINTIFF'S REVISED LOCAL RULE 56(a)2 STATEMENT

Plaintiff submits this Statement to comply with Local Rules 56(a)2 & 3 in opposing defendant's two motions for summary judgment.

**I.    Response To Moving Party's Local Rule 56(a)1 Statement**

1.   Paragraph 1 is admitted.

2.   Paragraph 2 is admitted.

3.   Paragraph 3 is admitted, except that Dreamcatcher is an LLC, not an Inc.

4.   Paragraph 4 is admitted.

5. That portion of paragraph 5 which states that plaintiff released the program in August 1999 is denied. Plaintiff admits that it named the program Keystroke Administrator in or about August 1999.

6. Paragraph 6 is admitted.

7. Paragraph 7 is admitted.

8. Paragraph 8 is admitted.

9. Paragraph 9 is admitted.

10. Paragraph 10 is admitted.

11. Paragraph 11 is admitted.

12. Paragraph 12 is denied.

13. That portion of paragraph 13 that states that plaintiff never obtained a written license or written consent to use PWLS' mark is admitted. Otherwise, the paragraph is denied.

14. Plaintiff has no knowledge concerning the purported fact set forth in paragraph 14.

Further, plaintiff denies that the facts it has admitted are sufficient to sustain defendant's summary judgment motion.

## II. Plaintiff's Statement of Material Facts Genuinely In Issue

**Introduction:** Plaintiff has not cross-moved for summary judgment. Nevertheless it believes that many of the facts set forth below should not be in issue.

It is not certain as to defendant's position on these facts, however. Under these circumstances, it will assume for present purposes that the defendant will not admit these facts, even if the evidence establishes them and there is no evidence that refutes them.

1. At the conclusion of the summer 1999 demonstration of the Program to him, plaintiff's (PWLS') Ron Dilatush told Ed Corey that he was impressed with the Program, that it addressed a pressing need in Pop Warner football, and that PWLS had no plans to create this sort of software itself, that it would be interested in supporting a business that had such a product so long as the business was ready to support the product and keep it current. (Brown Aff., para. 6.)

2. In the fall of 1999, Neil Dryburgh, a PWLS marketing consultant, and Jon Butler, PWLS' Executive Director, each called plaintiff's William Brown and told him that PWLS was interested in the Program, but they needed to see it first before deciding whether to meet with him and discuss cooperation and support. (Brown Aff., para. 8.)

3. Brown made arrangements with Dryburgh and Butler to show the Program to them in Florida that December at the Pop Warner national championships. (Brown Aff., para. 8.)

4. In the first Dryburgh to Brown phone call, Dryburgh asked for a copy of the Program's source code. (Brown Aff., para. 9.)

5. On that occasion, Brown politely told Dryburgh that the source code would not help him understand what the Program could do for the user and that it was the user's perspective that should be important to PWLS. (Brown Aff., para. 9.)

6. Dryburgh then moved on to a different subject. (Brown Aff., para. 9.)

7. Just before the national championships, Dryburgh had his second phone conversation with Brown, and in that conversation, he again asked for a copy of the source code, saying that PWLS was developing an informational web site and that he needed the code so the developer could see whether the Program could be integrated into the site and thus allow plaintiff to sell the Program to customers through the site. (Brown Aff., para. 10.)

8. In response, Brown told Dryburgh that the Program was designed to be integrated with the web, that this was one of the reasons he used a particular platform to build the Program, and that, accordingly, he – Dryburgh – did not need the source code. (Brown Aff., para. 10.)

9. This appeared to satisfy Dryburgh, and, for the moment at least, he dropped the matter. (Brown Aff., para. 10.)

10. Brown demonstrated the program for Dryburgh at the national championships (taking him through a booklet that depicted what the Program would do). (Brown Aff., para. 11; Butler Depo., p. 91.)

11.    Dryburgh told Brown that the Program looked great and that it was the best thing he had ever seen. (Brown Aff., para. 11.)

12.    On that occasion, for a third time, Dryburgh asked Brown for the Program's source code. (Brown Aff., para. 11.)

13.    Again, Brown refused, reiterating why he had no reason to see the code. (Brown Aff., para 11; see also, Butler Depo., pp. 93-94.)

14.    At the February 8, 2000 meeting that Brown attended at PWLS' office to discuss PWLS' cooperation and support for the Program, PWLS promised to, or represented that it would, refer local officials to plaintiff and recommend the Program to them . (Brown Aff., para. 17, Butler Depo., Exhs. 4&5.)

15.    At this meeting, PWLS promised to, or represented that it would, share with plaintiff information regarding changes in its forms and reports. (Brown Aff., para. 17; Butler Depo., p. 255.)

16.    At this meeting, PWLS gave plaintiff permission to use the words "Pop Warner" in the name of the Program. (Brown Aff., para. 17.)

17.    At this meeting, PWLS promised to send its logo artwork to plaintiff so that plaintiff could include it on the reports that the Program generated. (Brown Aff., para. 17; Butler Depo., pp. 198-204; Butler Depo., Exh. 5.) )

18.    From February 8, 2000 until October 17, 2000, PWLS deliberately led plaintiff to believe that it was a supporter of its business, that the interests of the two

entities were consistent, complimentary and perfectly aligned and that they were virtually strategic partners. (Brown Aff. paras. 19 – 21; Butler Depo., pp. 104, 148-149, 206-217; Butler Depo., Exhs. 4, 5 & 9.)

19. From 1999 through early 2001, PWLS deliberately concealed from plaintiff that its true plan was to develop its own administrative software, to make that software a feature on a web site that it was developing that was more than just informational, to sell this software through the web site to the same persons that plaintiff would be soliciting and to generate additional revenue from web site advertising. (Butler Depo., p. 45-59; Brown Aff., para. 21.)

20. PWLS and its technical consultants viewed the Program via the set ups that Brown had sent to PWLS. (Brown Aff., paras. 21 – 24; Butler Depo., pp. 152-155, 167-174; see also, Butler Depo., pp. 98-101, 117.)

21. Based on that viewing or viewings, PWLS, through its consultants or otherwise, appropriated for its own use the information that it had agreed in the Confidentiality Agreement to protect, and used this information to do the things that both the Confidentiality Agreement and the Software License prohibit, including, but not limited to reverse engineering and copying, in order to develop its own administrative software. (Brown Aff., paras. 21-24; Butler Depo., pp. 152-155, 167-174; see also, Butler Depo., pp. 97-101, 117, 107, 110-111, 114.)

22. Once PWLS had learned what it needed to learn from the Program, used this knowledge in developing its own software and was ready to introduce its product to the market, PWLS determined to eliminate plaintiff as a competitor. (Butler Depo., Exh. 9; Brown Aff. para. 27, Brown Depo., pp. 220-22; Butler Depo. Exh. 16; Butler Depo., pp. 222-224, 255;

23. To this end, it communicated to plaintiff's potential customers that it had not approved plaintiff's program, when, its pre-October 17, 2000 words and actions constitute approval. (Brown Aff., para. 28.)

24. To this end, it communicated to plaintiff's potential customers that plaintiff was using a Microsoft software product without a license and that it was illegally using an NFL sound-bite when it knew that these statements were false and disparaging. (Brown Aff., para. 28.)

25. To this end, it communicated to plaintiff's potential customers that Brown had an irremediable conflict of interest in pursuing a commercial relationship with Pop Warner volunteers regarding Pop Warner activities given his status as a Pop Warner volunteer, when it had condoned the so-called "conflict" for almost a year and knew that if indeed there were a conflict, Brown could quickly remedy it by relinquishing his volunteer activities. (Brown Aff. para. 28.)

26. To this end, it told the market that the Program was a "non-sanctioned" product, suggesting, falsely, that there was something wrong or improper about it, or at

the very least suggesting that customers should be the sanctioned product, namely its own competitive software. (Brown Aff. para. 28.)

27. To this end, it told plaintiff's potential customers that they should not buy the Program. (Brown Aff., para. 28.)

28. Plaintiff ceased using any PWLS marks following its receipt of Butler's October 17, 2000 article. (Brown Aff., para. 32.)

29. Plaintiff never did anything that could or did generate confusion in the market as to the origin, ownership of its product or any affiliation with PWLS.

30. PWLS suffered no damage as a result of anything that plaintiff did.

PLAINTIFF DREAMCATCHER
SOFTWARE DEVELOPMENT, LLC

By: _____
Richard C. Robinson (ct04321)
Pullman & Comley, LLC
90 State House Square, 13th Flr.
Hartford, CT 06103
Telephone (860) 541-3333
Facsimile (860) 541-9099
Its Attorneys

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on November 19, 2003 to all counsel and pro se parties of record.

For the defendant:

Lisa M. Grasso, Esq.
Durant, Nicholas, Houston,
 Hodgson & Cortese-Costa, P.C.
1057 Broad Street
Bridgeport, CT  06604
(203) 366-3438
*Counsel for all Defendants*

Anthony B. Corleto, Esq.
Corleto & Associates, P.C.
107 Mill Plain Road, Suite 200
Danbury, CT  06811

_____
Richard C. Robinson (ct04321)

HTFD/59775.2/RCR/118996v1