**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DREAMCATCHER SOFTWARE

DEVELOPMENT, INC.

      Plaintiff,

vs.

POP WARNER LITTLE SCHOLARS, INC.

      Defendant

CIVIL ACTION

NO. 3:01-CV-808 (AVC)

October 19, 2005

## JOINT TRIAL MEMORANDUM

The parties hereby submit in duplicate their Joint Trial Memorandum, in accordance with the Standing Order Regarding Trial Memoranda in Civil Cases.

### 1) TRIAL COUNSEL:

Plaintiff's Counsel:
Daniel J. Mahaney / Timothy F. Sullivan
Mahaney, Geghan & Sullivan
One Exchange Place, Sixth Floor
Waterbury, CT 06702
(203) 574-0056

Defendant's Counsel:
Anthony B. Corleto, Esq.
Frank G. Corazzelli, Esq.
Corleto & Associates, PC
107 Mill Plain Road, Suite 200
Danbury, CT 06811
(203) 790-7540

2) **JURISDICTION:**

Federal jurisdiction exists by virtue of 28 U.S.C. Section 1332 in that this is an action between citizens of different states where the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs. Jurisdiction also exists by virtue of 28 U.S.C. Section 1331 because of the Federal Lanham Act claim set forth in the Fifth Count of the Plaintiff's Complaint, and by virtue of the Lanham Act claims set forth in Counts One, Two and Three of Pop Warner's counter-claim against Dreamcatcher.

3) **JURY/NON-JURY:**

This case is to be tried to the Court.

4) **NATURE OF CASE:**

As to the Complaint:

The First Count of the Plaintiff's Complaint sounds in breach of a certain Confidentiality and Nondisclosure Agreement entered into by the parties. The Plaintiffs seek the recovery of money damages incurred with respect to this breach.

The Second Count alleges violation of the Uniform Trade Secrets Act, Connecticut General Statutes §35-51, et seq. The Plaintiffs in this count seek damages for the loss and unjust enrichment caused by the misappropriation of trade secrets, punitive damages, and reasonable attorney's fees.

The Fourth Count of the Plaintiff's Complaint alleges violation of the Connecticut Unfair Trade Practice Act, Connecticut General Statutes §42-110a, et seq. The Plaintiffs seek actual damages, punitive damage, costs and reasonable attorney's fees based on the Defendants' unfair and deceptive acts or practices in the conduct of a trade or commerce.

The Fifth Count alleges violations of the Lanham Act, 15 U.S.C. §1125. Here, the Plaintiffs seek damages incurred for the Defendants' false and misleading representations of fact regarding the Plaintiff's product, as well as costs and reasonable attorney's fees.

The Sixth Count of the Plaintiff's Complaint alleges common law product disparagement. Plaintiff seeks damages for loss incurred as a result of the Defendants' false and disparaging statements of supposed fact regarding the Plaintiff's program.

As to the Counter-claims:

Pop Warner Little Scholars, Inc., is a not-for-profit organization, who owns the trademarks POP WARNER (USPTO Registration No. 816322) and POP WARNER LITTLE SCHOLARS (USPTO Registration No. 2,085,309). Pop Warner organizes youth football, flag football and cheerleading teams throughout the United States. At the time this action was commenced, the Pop Warner organization consisted of approximately 360,000 student participants divided among 5,000 football teams and cheer squads. The teams are organized into 1,125 associations, which in turn are divided into 35 leagues spread among 8 regions in the United States. The regions report to Pop Warner National Headquarters in Langhorne, Pennsylvania. Dreamcatcher claims to have developed a computer program to assist youth sports leagues to manage paperwork and administrative functions.

Dreamcatcher has used Pop Warner's trademarks in association with its product and has attempted to pass off its product as associated with and/or endorsed by and/or originating from Pop Warner. Pop Warner did not license Dreamcatcher to use its marks.

Pop Warner claims that Dreamcatcher's use of its marks in commerce is likely to cause confusion, deception or mistake as to the source, affiliation, connection or sponsorship of Dreamcatcher's goods and services, and that such constitutes an infringement under 15 USC §1114, (Counter-Claim, First Count), False Designation of Origin under 15 USC §1125 (Counter-Claim, Second Count), Dilution of a Famous Mark under 15 USC §1125(c) (Counter-Claim, Third Count), Common Law Infringement (Counter-Claim, Fourth Count), and violates the Connecticut Unfair Trade Practices Act, C.G.S. §42-110a et seq.

By reason of the foregoing, Pop Warner seeks permanent injunctive relief, declaratory relief, actual and treble damages, an equitable accounting of Dreamcatcher's profits, disgorgement of Dreamcatcher's profits, costs of litigation, attorney's fees, court costs, and statutory damages pursuant to 15 USC §1115 and §1117.

## 5) **STIPULATIONS OF FACT AND LAW:**

By Decision dated January 12, 2004, the Court dismissed the Third Count of Dreamcatcher's complaint, sounding in breach of software license, and the Seventh Count, sounding in tortious interference with a business expectancy.

## 6) **PLAINTIFF'S CONTENTIONS:**

First Count: Breach of Confidentiality Agreement:

William Brown, on behalf of Dreamcatcher Software Development, LLC ("Dreamcatcher") and Jon Butler, on behalf of Pop Warner Little Scholars, Inc. ("PWLS"), entered into a Confidentiality Agreement on or about January 24, 2000,

4

which purpose was to protect Dreamcatcher's software and any information it contained.
Among other things, PWLS was to protect Dreamcatcher's information and "shall not use, disclose, or permit to be disclosed at anytime prior to, during, or after the termination of this Agreement or any subsequent agreement entered into by the parties, the information, including, but not limited to, the product idea, in any manner competitive with or harmful to the programmers."

On May 10, 2000, Dreamcatcher sent two laptops, pre-loaded with its software and licensing agreement, to PWLS and Jon Butler and PWLS in Langhorne, Pennsylvania. Sometime thereafter, in violation of the Confidentiality Agreement, Jon Butler and PWLS sent the laptops to Neil Dryburgh in Massachusetts. Jon Butler wrongly informed Brown that Dryburgh was an employee of PWLS and therefore covered by the Confidentiality Agreement. As a result, Brown provided Dryburgh with the code to access the laptop's software.

Unbeknownst to Dreamcatcher and Brown, PWLS and/or Mr. Dryburgh, on PWLS' behalf, subsequently sent the pre-loaded laptops to Troy Benson and John Trimbach. At that time, Mr. Benson and Mr. Trimbach were partners and the persons responsible for developing PWLS' website, individually and through their companies, B and T and Frontline, and their consultant, Interactive.

The Plaintiff contends that Mr. Butler and PWLS' purpose in obtaining the pre-loaded laptops was to allow their internet consultants, Mr. Benson and Mr. Trimbach, to access Dreamcatcher's program-related confidential and proprietary information – the very information that Dreamcatcher sought to protect through the Confidentiality Agreement. PWLS further sought to create a functionally equivalent application to

Dreamcatcher's, and integrate it into the PWLS website, thereby deriving revenue either directly from it or through increased advertising revenues from its website.

### Second Count: Violation of the Connecticut Uniform Trade Secrets Act:

The information contained in the laptops which Brown sent to PWLS and Jon Butler are "trade secrets" within the meaning of the Connecticut Uniform Trade Secret Act, C.G.S. §35-51, et seq., and are thus subject to the protections provided therein. PWLS and Jon Butler misappropriated these trade secrets within the meaning of C.G.S. §35-51 by sending the pre-loaded laptops to Mr. Trimbach and Mr. Benson without Dreamcatcher's knowledge or consent. PWLS and Jon Butler did so willfully and maliciously and in violation of the parties' Confidentiality Agreement.

### Fourth Count: violation of Connecticut Unfair Trade Practices Act:

PWLS and Jon Butler are engaged in a "trade or commerce" within the meaning of the Connecticut Unfair Trade Practices Act, C.G.S. §42-110a, et seq. PWLS and Jon Butler have engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of a trade or of commerce and thus have violated the Connecticut Unfair Trade Practices Act by breaching the Confidentiality Agreement, by misappropriating trade secrets in violation of the Connecticut Uniform Trade Secrets Act, and by using false and misleading representations of fact regarding Dreamcatcher's software in order to promote PWLS' web-based application in violation of the Lanham Act, 15. U.S.C. §1125(a)(1)(B).

<u>Fifth and Sixth Counts: Violation of the Lanham Act and Product Disparagement:</u>

William Brown met with PWLS staff at its national offices in Langhorne, Pennsylvania on February 8, 2000, when he demonstrated Dreamcatcher's software program to PWLS. Upon conclusion of the meeting, PWLS promised Dreamcatcher the support it sought, promising to furnish Dreamcatcher with Pop Warner league and conference contacts, promising to refer to Dreamcatcher any Pop Warner members whom sought information about software programs, and promising to share with Dreamcatcher all changes in Pop Warner's required forms so that Dreamcatcher's software would remain accurate. PWLS further gave Dreamcatcher permission to use the Pop Warner name in the name of the software program. Shortly thereafter, in reliance on this permission, Dreamcatcher changed the name of the program from "Keystroke Administrator" to "Pop Warner Administrator." Also at this meeting, PWLS promised to supply its logo artwork to Dreamcatcher so that Dreamcatcher could give the program the ability to produce reports and filings destined for PWLS on documents that contained the PWLS logo. PWLS subsequently did send the logo artwork to William Brown via U.S. mail.

Relying on these promises, Dreamcatcher began distributing pre-loaded laptops to several Pop Warner conferences, which each purchased one or two laptops to test, with the expectation that they would purchase a laptop for each of their associations if they liked the program.

PWLS then began engaging in "commercial advertising or promotion" which misrepresented the nature of Dreamcatcher's program in violation of the Lanham Act, 15 U.S.C. §1125(a)(1)(B). This adverse promotion consisted of communication to

7

Dreamcatcher's potential customers that PWLS had not approved Dreamcatcher's program, that Dreamcatcher lacked the requisite licensing from Microsoft to market the program, that Dreamcatcher was illegally using a National Football League soundbite in its program, and that the program could not be used in conjunction with the internet, among others. Thereafter, Pop Warner conferences and associations ceased purchasing the Dreamcatcher product.

## 7) DEFENDANT/COUNTER-CLAIM CONTENTIONS:

Dreamcatcher claims that it developed a computer program to assist PWLS leagues to manage paperwork and administrative functions. Dreamcatcher alleges that its member William Brown, developed a software program that automates the completion of various PWLS required forms (Complaint, ¶¶ 14,15,16); and that Dreamcatcher was formed to market the software program to "various Pop Warner leagues and conferences across the country" (Complaint, ¶ 15). Dreamcatcher claims that PWLS' "cooperation and support" was "central" to the success of Plaintiff's business (Complaint, ¶ 17), and that by PWLS' independent development of web-based software, through various consultants, for use by its leagues, PWLS caused Plaintiff harm.

Pop Warner contends that Dreamcatcher has failed to establish any legally cognizable relationship between it and PWLS, much less any agreement to restrict Pop Warner's activity or requiring Pop Warner to provide "cooperation and support".

In August 1999, Dreamcatcher released its program under the name "Keystroke Administrator". In late 1999, Dreamcatcher attempted to obtain an endorsement from PWLS in assistance in marketing its product. To that end, Dreamcatcher sent PWLS a

Non-Disclosure and Confidentiality Agreement which was executed by Brown on December 14, 1999 (hereinafter "December 14, 1999 Agreement"). The agreement was revised to delete a paragraph that would arguably have restricted Pop Warner from engaging in competitive activity to the detriment of Dreamcatcher and Jon Butler, Executive Director of PWLS signed the revised agreement on behalf of PWLS on January 24, 2000.

Dreamcatcher claims it was given "permission" to change the name of its program to "Pop Warner Administrator". Dreamcatcher provides no documentation to prove its claim. PWLS denies that such permission was given. PWLS in fact advised Dreamcatcher that it needed to obtain a license from its clearinghouse, Licensing Resource Group if it wanted to use PWLS' marks.

On October 17, 2000, PWLS' Executive Director, Jon Butler, sent Dreamcatcher an e-mail advising that PWLS' marks could not be used in conjunction with Dreamcatcher's product. This e-mail was followed up by letters dated November 14, 2000 and December 1, 2000. In response Dreamcatcher changed the name of the program to "Administrator" but continued to use PWLS' mark "Pop Warner" in conjunction with its advertising and sale of its products.

Dreamcatcher's marketing strategy was to market the program to various Pop Warner leagues and conferences across the country. If that proved successful, Dreamcatcher intended to modify the program and market it to other sports programs. (See, Complaint, ¶ 15). Dreamcatcher's primary marketing method was direct e-mail solicitations. The e-mail solicitations contain reference to the Pop Warner organization and used the trademark Pop Warner as a means to solicit business. This lead to

volunteers at Pop Warner leagues and conferences to become confused as to the affiliation and endorsement of the Dreamcatcher product by PWLS. Several members inquired about the affiliation due to their confusion as to Dreamcatcher's affiliation. PWLS spent time and energy advising volunteer organizations that it was not associated with Dreamcatcher and did not endorse the Dreamcatcher product. Despite PWLS' attempt to distance itself from the Dreamcatcher product, Dreamcatcher continued to hold it's product out as being endorsed by PWLS.

PWLS has policies and practices for policing its trademarks and enforcing its intellectual property rights. It has retained the services of the law firm of Blank, Rome, Comisky and McCauley, P.C. to police its marks and protect its interests.

In 1998, PWLS engaged the services of Frontline Interactive, LLC. (hereinafter "FILLC") to develop a website for PWLS. Frontline Interactive, LLC. outsourced the software and web-based development of the website to Interactive Planet, Inc. (hereinafter "IPI").

FILLC and IPI were to receive payment through a revenue sharing agreement on revenue received from advertisements and sponsorship on the website.

In early 2000, IPI began developing administrative software to allow Pop Warner associations to compile and file the requisite roster forms with Pop Warner national.

In order to reimburse IPI for development costs, PWLS intended to charge its associations a one-time fee of $49.95 to $74.95 for the use of this software.

When IPI received this lawsuit, it refused to move forward with the software development and terminated its relationship with PWLS. As a result of IPI's withdrawal, in 2001, PWLS retained the service of Cal-Soft, a/k/a California Software, Inc. for the

development of the web-site and roster software. In order to retain Cal-Soft's services, PWLS paid $5,000.00 in up-front fees.

Dreamcatcher has failed to disclose any information regarding the marketing and sales of its product. On November 13, 2002, PWLS, through its attorneys, specifically requested all information regarding the sale of Dreamcatcher products. Dreamcatcher has failed to provide this information.

Plaintiffs have instead disclosed "projected financial statements" for the years 2000 through 2004. The projections are apparently based upon assumptions made by the plaintiff, as outlined in page one of the financial statements.

On the sixth page of its projected financials, the plaintiffs allege that they sold 64 units in 2000. Dreamcatcher financials indicate that it sold software at $495 and software and hardware at $1,198. Assuming that Dreamcatcher only sold software at $490.00 per unit, their sales for 2000 would be $31,680.00 ($495.00 x 64). If Dreamcatcher sold software and hardware their total sales would be $86,672.00 ($1,198.00 x 64). The plaintiffs have produced no information regarding their sales through 2001 despite discovery requests. The plaintiff's projected total revenue for 2001 is $556,925.00. (See, Projected Financials, page 2).

PWLS is entitled to monetary damages, under the Lanham Act, 15 U.S.C. §1117(a), which provides in relevant part:

(a)     When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USCS § 1125(a) or (d)], or a willful violation under section 43(c) [15 USCS § 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USCS § § 1111, 1114], and subject to the principles of equity, to recover

11

(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction...

(b)    In assessing damages under subsection (a),the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 32(1)(a) of this Act (*15 U.S.C. 1114*(1)(a)) or section 220506 of title 36, United States Code, that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 34(d) of this Act (*15 U.S.C. 1116*(d)), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of the Internal Revenue Code of 1986 [*26 USCS §6621*(a)(2)], commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

There is no requirement to show actual confusion in order to recover for infringement under 15 U.S.C. §1114(a), simply a likelihood of confusion. "The plaintiff need not provide evidence of actual consumer confusion by resort to witness testimony, consumer surveys or other evidence in order to establish entitlement to damages under the Lanham Act, if it adequately demonstrates that the defendant has intentionally set out to deceive the public." New York Racing Association, Inc. v. Stroup News Agency Corporation, 920 F.Supp.295 (N.D.NY 1996) (citing, Resource Dev, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc., 926 F.2d 134 (2d Cir. 1991).

Dreamcatcher held itself out as being endorsed by PWLS and under contract with PWLS. It continued to make this misrepresentation despite PWLS' warnings. The deliberate actions of Dreamcatcher raises the presumption that consumers were actually confused by Dreamcatcher's actions. Resource Development. As such, PWLS will be

able to recover monetary damages.   Dreamcatcher's conduct also demonstrates intentional deception of consumers.  As such, PWLS will be entitled to Dreamcatcher's profits.

Although the quantum of damages must be demonstrated with specificity, courts may engage in some degree of speculation in computing the amount of damages, particularly when the inability to  compute then is attributed to the defendants' wrongdoing.  PPX Enterprises, at 271.

As Dreamcatcher refused to produce the necessary accounts, PWLS will be entitled to some reasonable inferences in the determination of damages.

One way a court may measure how much damage a defendant has caused plaintiff by infringing upon the plaintiff's mark is by determining the royalty the plaintiff would have received from a license.  New York Racing Association, Inc. v. Stroup News Agency, 920 F. Supp. 295 (N.D.N.Y. 1996).  Pop Warner has a licensing program through Licensing Resource Group, Inc.  If Dreamcatcher had obtained a license, Pop Warner would have been entitled to a $50.00 annual fee and 10% of Dreamcatcher's annual gross revenue or $300 per annum, whichever is larger.  Based on Dreamcatcher's $556,925 projection for 20%, the license fee for that year would be $55,692.50.

Case law recognizes that a "rational infringer" may well chose to simply infringe a senior user's mark and not pay a royalty on the grounds that if caught, it will simply be forced to pay a royalty anyway.  Thus, an award for damages measured by loss of royalty may not adequately compensate a plaintiff or act as a sufficient deterrent for future violations.  N.Y. Racing Association, 920 F. Supp. at 303, citing Playboy Enterprises, Inc. v. Baccarat Clothing, Co., 292 F.2d 1272 (9th Cir. 1982).

To address this issue, the statute provides that "in assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found to be actual damages, not exceeding three times that amount. New York Racing Association, Inc. v. Stroup News Agency Corporation, 920 F.Supp. 295 (N.D.N.Y. 1996). The Lanham Act §35(a) provides, in relevant part, that:

> "If the court shall find that the amount of recovery based on profits is either inadequate or excessive, the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."

15 U.S.C. §1117(a)

In this case, PWLS declined to endorse the Dreamcatcher product because as of February 2000, PWLS had contracted with another party to develop software. Despite the lack of a license, Dreamcatcher continued to solicit PWLS association members, insisting that PWLS had endorsed its product. Given the circumstances of this case, including Dreamcatcher's intentional and deliberate attempt to convince consumers that it was endorsed by PWLS, there is a strong likelihood that the court will increase the amount recoverable as actual damages through royalties by some amount in order to deter intentional infringement.

Where defendant's infringement is found to be deliberate and willful, plaintiff is eligible to recover attorneys fees and costs. 15 USCS §1117(a). Mirage Resorts v. Cybercom Products, 228 F. Supp. 1141 (2002). Pop Warner has incurred fees and costs, through 12/28/04, in the amount of $51,527.25.

If the court finds that Dreamcatcher infringed on PWLS' marks in violation of 15 U.S.C. 1114(a) or 1125(a), then PWLS is entitled, as a matter of law, to a finding that

Dreamcatcher violated CUTPA. The U.S. District Court for Connecticut has found that a violation of the Lanham Act alone establishes liability under CUTPA. <u>Dial Corp. v. Manghnani Investments Corp.</u>, 659 F.Supp. 1230 (D. Conn. 1987); <u>Timex Corp. v. Stoller</u>, 961 F.Supp. 374 (D.Conn. 1997). Therefore, if the court should grant PWLS' summary judgment infringement or false designation of origin, PWLS is entitled to summary judgment on its CUTPA claim as a matter of law.

## 8) <u>LEGAL ISSUES:</u>

1. <u>First Count: Breach of Confidentiality Agreement:</u>

    a) Did the actions of Jon Butler and PWLS constitute breach of the Confidentiality Agreement where they delivered Dreamcatcher's pre-loaded laptop to Neil Dryburgh, a Pop Warner consultant, and subsequently caused the laptops to be delivered to Troy Benson and John Trimbach, consultants who were developing a website for Pop Warner?

2. <u>Second Count: Violation of the Connecticut Uniform Trade Secrets Act:</u>

    a) Is the software program, its contents, and its access code, and that which the Plaintiff gave to Jon Butler in pre-loaded laptops a trade secret within the meaning of C.G.S. §35-51(d)?

    b) Did Jon Butler and PWLS misappropriate these trade secrets in violation of C.G.S. §35-51, et seq.?

    c) Was the misappropriation willful and malicious?

3. Fourth Count: Violation of Connecticut Unfair Trade Practices Act:

    a) Did Jon Butler and PWLS engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of their trade or commerce in violation of C.G.S. §42-110a, et seq.?

4. Fifth Count: Violation of the Lanham Act:

    a) Were Jon Butler and PWLS in competition with Dreamcatcher in the development and marketing of an administrative software program?

    b) Did Jon Butler and PWLS misrepresent the nature characteristics, qualities, or geographic origin of Dreamcatcher's goods, services, or commercial activities in violation of 15 U.S.C. §1125(a)(1)(B)?

5. Sixth Count: Product Disparagement:

    a) Did Jon Butler and PWLS make false and disparaging statements with regard to Dreamcatcher and/or its software program?

    9) **VOIR DIRE QUESTIONS:** (Not applicable.)

    10) **LIST OF WITNESSES:**

Plaintiff's Witnesses:

Jon Butler
Pop Warner Little Scholars, Inc.
586 Middletown Blvd., Suite C-100
Langhorne, PA 19047

16

Jon Butler is expected to testify as to the Confidentiality Agreement signed between he and William Brown. He is further expected to testify as to Pop Warner's business relationship with Troy Benson and John Trimbach, and their collective plan for a Pop Warner revenue-generating website. Mr. Butler is expected to testify as to Pop Warner's business relationship with Neil Dryburgh. He is further expected to testify that he caused to be delivered to Neil Dryburgh, Troy Benson, and John Trimbach laptops pre-loaded with Dreamcatcher's Program. Jon Butler is expected to testify that Ronald Dilatush recommended the Program to others within Pop Warner and that Pop Warner sent its logos to William Brown.

Ronald Dilatush
2156 West Wellington Road
Newtown, PA 18940

Mr. Dilatush is expected to testify as to his position with Pop Warner. He is expected to testify as to the recommendations of Dreamcatcher's Program that he made to those within Pop Warner. Mr. Dilatush is further expected to testify that, on several occasions, he contacted William Brown in an attempt to obtain the Program's access codes.

William Brown
Dreamcatcher Software Development, LLC
221 New Road
Avon, CT 06001

Mr. Brown is expected to testify as to the various representations made to him by representatives of Pop Warner, including those of Mr. Butler. He is expected to testify as to his and Dreamcatcher's reliance on those representations. He is further expected to testify as to the Confidentiality Agreement between he and Mr. Butler. Mr. Brown is expected to testify as to damages incurred by Dreamcatcher.

Stephen Pestillo
Innovative Application Development, LLC
497 Main Street
Farmington, CT 06032

Mr. Pestillo is expected to testify as to his business relationship with Dreamcatcher and William Brown. He is further expected to testify as to his contribution to the development of the Program, as well as the cost for these services rendered, and the amount of money received from Dreamcatcher and/or William Brown and Vincent McDonald.

Richard Wilczewski, CPA
1503 Bucks Hill Road
Southbury, CT 06488

Mr. Wilczewski is expected to testify as to the accounting and financial records of Dreamcatcher, and its developmental costs in connection with the Program.

Vincent McDonald
Dreamcatcher Software Development, LLC
221 New Road
Avon, CT 06001

Mr. McDonald is expected to testify as to his capital investments into Dreamcatcher and the Program being developed for Pop Warner, as well as damages incurred by Dreamcatcher.


Richard S. Robinson, Esq.
Pullman & Comley, LLC
90 State House Square
Hartford, CT 06103

Mr. Robinson is expected to testify as to his attorney's fees for services rendered to Dreamcatcher in his representation of it. He is further expected to testify as to payments received by Dreamcatcher and/or William Brown and Vincent McDonald.

Defendants' Witnesses:

William Brown
Dreamcatcher Software Development, LLC
221 New Road
Avon, CT 06001

Mr. Brown is expected to testify that he developed the Dreamcatcher Software Program and that the program was originally released under the name "Keystroke Administrator". Mr. Brown is further expected to testify that he attempted to extract a "Non-Disclosure and Confidentiality Agreement" from Pop Warner which would have restricted Pop Warner from competing with Dreamcatcher, and that Pop Warner rejected the agreement with that restriction, and that consequently Brown revised the agreement to delete the restriction against competing with Dreamcatcher, and the revised agreement was signed by Pop Warner. Brown will also testify that from February 8, 2000 through October 2000, Dreamcatcher used the name "Pop Warner Administrator" for the program formerly known as "Keystroke Administrator". Brown will also testify that despite receiving correspondence on October 17, 2000, it was not until after a second correspondence dated November 14, 2000 that Dreamcatcher removed the Pop Warner mark from its program. Brown will further testify that the program name was then changed to "Administrator".

Brown will further testify that he sought Pop Warner's permission to use the "Pop Warner" name and Pop Warner's endorsement of Dreamcatcher's product. Brown will further testify that he marketed Dreamcatcher's product to Pop Warner associations and teams and held out the product as being endorsed by Pop Warner. Ultimately, Brown will admit that he never obtained a license or written consent to use the Pop Warner name or mark in the marketing of his product.

19

Jon Butler
Pop Warner Little Scholars, Inc.
586 Middletown Blvd., Suite C-100
Langhorne, PA 19047

Mr. Butler is expected to testify about the history of the Pop Warner organization, its membership, structure and the number of individuals and teams participating in the organization. Mr. Butler will further testify about Pop Warner's trademarks, and Pop Warner's policies and practices with respect to licensing Pop Warner trademarks.

Mr. Butler will further testify about the history of his dealings with Dreamcatcher and Bill Brown, his rejection of any purported restriction against Pop Warner's commercial activity, the organization's history of allowing marks to be used by local leagues for non-commercial purposes, and William Brown's violation of the organizations' anti-inurement policies.

Ronald Dilatush
2156 West Wellington Road
Newtown, PA 18940

Mr. Dilatush is expected to testify about his interaction with William Brown, Pop Warner's licensing practices and Pop Warner's efforts to develop an internet based application.

Vincent McDonald
Dreamcatcher Software Development, LLC
221 New Road
Avon, CT 06001

Mr. McDonald is expected to testify about development of the Dreamcatcher software application, its intended market, and efforts to sell the product.

Stephen Pestillo
Innovative Application Development, LLC
497 Main Street
Farmington, CT 06032

Mr. Pestillo is expected to testify about his development of Dreamcatcher's "Administrator" or "Keystroke Administrator" applications, his interaction with William Brown and the lack of any "trade secret" material within Dreamcatcher's software product.

New Horizons
Manchester, CT

Richard Wilczewski, CPA
1503 Bucks Hill Road
Southbury, CT 06488

Mr. Wilczewski is expected to testify about his participation in preparing Dreamcatcher's business projection.

11) **EXHIBITS:**

The Plaintiff shall use the following exhibits:

| NUMBER | EXHIBIT | CONTENT |
|--------|---------|---------|
| | Letter dated 5/5/99 from William Brown to Stephen Pestillo | Letter regarding business relationship |
| | Letter dated 4/28/99 from Stephen Pestillo to William Brown | Letter regarding business relationship |
| 1 | Regional Meeting Minutes dated 8/14/99 | Pop Warner Regional Meeting wherein Central CT made a presentation of software |
| 2 | Letter dated 12/2/99 from William Brown to Jon Butler | Letter regarding Confidentiality Agreement |

| | | |
|---|---|---|
| 3 | Letter dated 12/4/99 from William Brown to Jon Butler (cc: Neil Dryburgh) and first draft of Confidentiality Agreement | Letter regarding the importance of confidentiality |
| 4 | Confidentiality Agreement | Fully executed Confidentiality Agreement executed by William Brown on 12/2/99 and by Jon Butler on 1/24/00 |
| 5 | Pop Warner memo to League/Association | Memo regarding the Licensing Resource Group and the Pop Warner licensing program |
| 6 | Memo dated 2/7/00 | Pop Warner memo regarding review of existing software applications |
| 7 | Meeting Agenda dated 2/8/00 | Dreamcatcher Meeting Agenda |
| 8 | Fax cover sheet dated 2/14/00 from Phyllis of Pop Warner to William Brown | Fax with Pop Warner regional information attached |
| 9 | Pop Warner Logo Art | Pop Warner cheerleading and football logos |
| 10 | Dreamcatcher Software Development, LLC Operating Agreement dated 2/17/00 | |
| | Program Development Agreement dated 2/28/00 | Between William Brown and Stephen Pestillo |
| 11 | Letter dated March/00 to Pop Warner League/Associations | Letter regarding the 2000 PWLS Planning Guide |
| 12 | Letter dated 5/9/00 from William Brown to Jon Butler with Software License | Letter regarding enclosed laptops and access codes |
| 13 | Emails dated 5/15/00 and 5/16/00 from Jane Miller to William Brown | Emails regarding the software program |
| 14 | Licensed Vendor Report dated 5/19/00 | Licensing Resource Group printout of Pop Warner licensees |
| 15 | Fax cover sheet dated 6/7/00 from Ron | Fax regarding grade scale |

| | Dilatush to William Brown | conversions |
|---|---|---|
| 16 | Email dated 7/19/00 from Jane Miller to William Brown | Email regarding possibility of purchasing software/laptops with questions for Brown |
| 17 | Pop Warner Memo dated 8/28/00 | Memo regarding Awards.com as preferred partner |
| 18 | Letter dated 9/21/00 from William Brown to Jane Miller | Letter regarding laptop provided and sample reports |
| 19 | Letter dated 10/17/00 from Jon Butler to William Brown | Letter regarding use of Pop Warner name and marks |
| 20 | Email dated 10/27/00 from Deborah Kelley to William Brown | Regarding Ms. Kelley's opinion of the Program |
| 21 | Email dated 10/27/00 from Wendy Brady to William Brown | Regarding Ms. Brady's opinion of the Program |
| 22 | Letter dated 10/30/00 from William Brown to Jon Butler | Letter regarding resolution of issues |
| 23 | Letter dated 10/30/00 from William Brown to Jon Butler | Letter with Microsoft Access licensing attached |
| 24 | Email dated 10/31/00 from Becky Ryan to Bill Brown | Regarding Ms. Ryan's opinion of the product |
| 25 | Email dated 11/8/00 from Tracey Shook to William Brown | Regarding Ms. Shook's opinion of the Program |
| 26 | Letter dated 11/14/00 from Jon Butler to William Brown | Dreamcatcher is not a licensee at this time; Pop Warner will not officially endorse or license the product |
| 27 | Email dated 12/1/00 from Jon Butler to William Brown | Letter regarding use of Pop Warner name |
| 28 | Email dated 12/2/00 from William Brown to Jon Butler | Letter regarding change of name to "Administrator 2000" |
| 29 | Pop Warner Memo dated Jan/01 to League/Association contacts | Memo regarding ethical behavior and personal inurement |
| 30 | Email dated 1/4/01 from Jane Miller to | Email regarding Microsoft |

| | William Brown | licensing, Pop Warner approval |
|---|---|---|
| 31 | Email dated 1/19/01 from Jane Miller to William Brown | Email regarding statements of Ron Dilatush and Jon Butler |
| 32 | Letter dated 1/9/01 from William Brown to Jon Butler | Letter regarding Pop Warner licensing and Logical Solutions, Inc. |
| 33 | Pop Warner Memo dated 2/28/01 | Memo regarding new roster forms available online |
| 34 | Email dated 3/5/01 from PWLS to Ken Brierly | Email regarding Dreamcatcher software, the Pop Warner endorsement, and incompatibility with new web-based software |
| 35 | Email dated 3/12/01 from Ken Brierly to William Brown | "National says no" |
| 36 | Email dated 3/14/01 from Jon Butler to William Brown | Letter regarding a signed agreement |
| 37 | Email dated 3/16/01 from Wade Brockington to William Brown | "Please discontinue the transmission of unauthorized Pop Warner material." |
| 38 | Email from Harry Harrington to William Brown | Email regarding software and removal from list |
| 39 | Letter dated 3/22/01 from Attorney Turk to William Brown | Letter regarding representation of Pop Warner and Pop Warner name |
| 40 | Email dated 3/25/01 from Dennis Connors to William Brown | Email regarding "non-sanctioned product" |
| 41 | Letter dated 3/29/01 from William Brown to Attorney Turk | Letter regarding Dreamcatcher's understanding |
| 42 | Email dated 4/17/01 from William Brown to Joe Tobia | Email regarding laptop and continued business |
| 43 | Dreamcatcher Projected Financial Statements | For the years 2000, 2001, 2002, 2003, 2004 |
| | Invoices (13) from Innovative | |

| | | |
|---|---|---|
| | Application Development, LLC | |
| | Dreamcatcher Register QuickReport for Innovative Application Development, LLC | Checks disbursed from 2/28/00 through 3/12/02 |
| | Dreamcatcher Register QuickReport for O'Keefe Illustration & Design | Checks disbursed from 5/9/00 through 1/11/02 |
| | Dreamcatcher Register QuickReport for Pullman & Comley, LLC | Checks disbursed from 6/27/01 through 11/17/04 |
| | Dreamcatcher Register QuickReport for Sorokin, Gross & Hyde, P.C. | Checks disbursed from 2/28/00 through 6/27/00 |
| | Dreamcatcher Register QuickReport for Lajoie Investigations | Checks disbursed from 4/10/01 through 9/19/01 |
| | Dreamcatcher Register QuickReport for McCarthy & Associates, LLC | Check disbursed 5/9/00 |
| | Dreamcatcher Register QuickReport for Richard Wilczewski | Checks disbursed from 10/31/01 through 4/21/05 |
| | Affidavit of Legal Fees of Attorney Robinson | |
| | Pursuant to the Pretrial Order, Plaintiff reserves the right to introduce other exhibits as rebuttal and/or impeachment exhibits for good cause shown. | |

The Defendants shall use the following exhibits:

| LETTER | EXHIBIT | CONTENT |
|---|---|---|
| A | Confidentiality, Non-Disclosure Agreement | Fully executed confidentiality, Non-Disclosure Agreement signed by Jon Butler for Pop Warner Little Scholars, Inc. on January 24, 2000 and William Brown on December 2, 1999. |
| B | Draft Confidentiality, Non-Disclosure | Unexecuted draft agreement |

| | | |
|---|---|---|
| | Agreement | between Dreamcatcher and Pop Warner Little Scholars regarding use of information disclosed by Dreamcatcher and restricting development of similar software by Pop Warner |
| C | Pop Warner Logo Art | Various representations of Pop Warner logos |
| D | Memo regarding Pop Warner Licensing Program | Memo from Pop Warner headquarters regarding the use of the Pop Warner logo and its licensing program |
| E | May 9, 2000 letter from Brown to Butler | Letter regarding loaded laptop and licensing agreement |
| F | 10/30/00 letter from Brown to Butler | Letter regarding receiving Pop Warner endorsement |
| G | Pop Warner memo dated January 2001 | Memo regarding non-profit status and personal inurement |
| H | Printouts from Web pages of Dreamcatcher, Inc. | Printout of web: home pages letters pages and testimonial/ recommendation pages. Screen shot page and reports |
| I | Installation instructions. | Installation instructions for Administrator 2002 |
| J | Administrator 2002 instruction pages | Administrator 2002 instruction pages on: (1) how to back up data; (2) update installations; (3) set up off line version; (4) develop mailing labels and page set up. |
| K | Dreamcatcher financials | Projected financial statements for Dreamcatcher Software Development, LLC for 2000, 2001, 2002, 2003 and |

| | | 2004 |
|---|---|---|
| L | Agreement b/w Licensing Resource Group, Inc. and Pop Warner | The agreement b/w LRG and Pop Warner regarding the handling all licensing for Pop Warner trademarks |
| M | LRG License Agreement | Standard license agreement between Licensing Resource Group, Inc. and licensee. Licensing Resource Group, Inc. has been retained by Pop Warner Little Scholars to handle all licensing for the entity. |
| N | Memo August 28, 2000 regarding Awards.com | Memo regarding Pop Warner's endorsement of Awards.com |
| O | Email from Brown to all Pop Warner Little Scholars regional offices | Email regarding the sale of Administrator 2001 software design for Pop Warner Associations by plaintiff |
| P | Executed Confidentiality, Non-Disclosure Agreement | Fully executed confidentiality, Non-Disclosure Agreement signed by Jon Butler for Pop Warner Little Scholars, Inc. on January 24, 2000 and William Brown on December 2, 1999. |
| Q | December 14, 1999 letter from Brown to Driver endorsing Draft Confidentiality Non-Disclosure Agreement | Requesting PWLS sign agreement unexecuted Initial Confidentiality Non-Disclosure Agreement sent by Butler |
| R | December 14, 1999 letter from Brown to Butler | Letter regarding software program designed specifically for Pop Warner Little Scholars advising that Dreamcatcher is prepared to deliver an initial release and enclosing draft |

| | | Confidentiality Agreement |
|---|---|---|
| S | Emails between Dreamcatcher Software Development, LLC, Pop Warner Little Scholars regional association | Emails in March and April 2001 regarding use of Dreamcatcher Software and endorsement of the product by Pop Warner Little Scholars |
| T | 3/5/98 announcement of PWLS roster software by Pop Warner | Announcement from Pop Warner Little Scholars regarding purchase of PWLS roster software from Athena Software that produces computerized football and cheerleader rosters and mailing lists |
| U | 12/1/00 email from Butler to Brown | Email regarding cease and desist the use of the Pop Warner trademark |
| V | 11/14/00 letter from Butler to Brown | Advising that Dreamcatcher should not use Pop Warner's name of logos |
| W | 10/30/00 letter from Brown to Butler | Interest of Dreamcatcher to obtain written consent for the use of "Pop Warner Administrator" and willingness to indemnify defendant for any exposure |
| X | 10/30/00 letter from Brown to Butler | Letter regarding obtaining Pop Warner endorsement |
| Y | 10/17/00 letter from Butler to Brown | Letter regarding cease and desist the use of the term "Pop Warner" with its promotion of Dreamcatcher product as Pop Warner Administrator 2002 |
| Z | Email dated March 16, 2000 from Brown to Butler | Email requesting face to face meeting |
| AA | 1/9/01 letter from Brown to Butler | Cost of the Dreamcatcher product and requesting cooperation between Pop Warner and Dreamcatcher |

| | | |
|---|---|---|
| | | relating to the promotion and sale of Dreamcatcher Software |
| BB | 12/2/00 email from Brown to Butler | Dreamcatcher's removal of the Pop Warner trademark and logos from its marketing material. Attached email sent out. Copy of November 28, 2000 email sent out to all Pop Warner administrators. |
| CC | Complaint | Copy of Complaint filed by Dreamcatcher against defendants |
| DD | Answer and Counterclaims | Answer and Counterclaims filed by Pop Warner Little Scholars against Dreamcatcher LLC |
| EE | Certified Trademark registration of Pop Warner | |
| FF | Certified Trademark registration of Pop Warner Little Scholars | |
| GG | Letter from Law firm of Blank Roman to Brown | Cease and desist letter demanding that Brown stop using defendant trademark |
| HH | 12/3/01 letter from Law firm of Corleto & Assoc. to Law firm of Pullman and Comley | Cease and desist letter demanding Plaintiff cease using Defendant trademark |
| II | 12/19/01 letter from Corleto & Assoc. to Pullman and Comley | Enclosing printouts of plaintiff web pages showing continued use of defendant's marks |
| JJ | Operating Agreement for Dreamcatcher Software Development, LLC | |
| KK | Agreement between Dreamcatcher and Innovative Developers | Agreement with Dreamcatcher and a subcontractor on development of Dreamcatcher's product |
| LL | Accounts and records covering | Records of development |

29

|  | development of the Administrator Program | process of Dreamcatcher's product |
|---|---|---|
| MM | Accounts and records covering the sales and marketing of the Administrator Program | Records of sales and marketing efforts of Dreamcatcher's product |
| OO | Outlines, flow charts and other documents setting forth the design elements of the Administrator program | Documents describing the design of Dreamcatcher's product |
| PP | Testimonial letters | Unredated testimonial letters from Dreamcatcher to customers regarding the purchase and intended use of the Dreamcatcher product |
| QQ | Microsoft Office Developer's license | Standard Developers License Agreement for programs using Microsoft office utilities including Access, Excel and Visual Basics |
| RR | All documents and materials to be produced by Steven Pistillo pursuant to requests made at his October 12, 2005 deposition. | |
|  | Pursuant to the Pretrial Order, Pop Warner reserves the right to introduce other exhibits as rebuttal to evidence introduced by Dreamcatcher | |

12) **DEPOSITION TESTIMONY:** (Not applicable.)

13) **REQUESTS FOR JURY INSTRUCTIONS:** (Not applicable.)

14) **ANTICIPATED EVIDENTIARY PROBLEMS:** None.

15) **PROPOSED FINDINGS AND CONCLUSIONS:**

The Plaintiff proposed the following findings of fact and conclusions of law:

1. That the parties entered into a Confidentiality Agreement on or about January 24, 2000, which purpose was to protect Dreamcatcher's software application, the Program, and any information it contained.

30

2. That Jon Butler and PWLS caused Dreamcatcher's laptops, pre-loaded with its Program, to be sent to PWLS' consultants, Mr. Trimbach and Mr. Benson.

3. That this action constitutes a breach of the Confidentiality Agreement in that Jon Butler and PWLS supplied persons not covered by the Agreement with Dreamcatcher's work product, the product which Dreamcatcher sought to protect through the Confidentiality Agreement.

4. That Jon Butler and PWLS' purpose in obtaining Dreamcatcher's laptops loaded with the Program was to furnish that information contained within to Pop Warner's partners, Mr. Benson and Mr. Trimbach, the partners of B and T and Frontline and the persons responsible for developing PWLS' website.

5. That Dreamcatcher was damaged by this breach of the Confidentiality Agreement.

6. That the information and software application contained in the laptops which Jon Butler and PWLS sent to Mr. Benson and Mr. Trimbach are "trade secrets" within the meaning of the Connecticut Uniform Trade Secret Act, C.G.S. §35-51, et seq.

7. That Jon Butler and PWLS misappropriated these trade secrets within the meaning of the Connecticut Uniform Trade Secret Act, C.G.S. §35-51, et seq. PWLS and Jon Butler misappropriated these trade secrets within the meaning of C.G.S. §35-51, et seq.

8. That Dreamcatcher suffered damages as a result of the misappropriation.

9. That the misappropriation was willful and malicious, and therefore entitled Dreamcatcher to an award for punitive damages and attorney's fees and costs.

31

10. That PWLS and Jon Butler have engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of a trade or of commerce and thus have violated the Connecticut Unfair Trade Practices Act by breaching the Confidentiality Agreement, by misappropriating trade secrets in violation of the Connecticut Uniform Trade Secrets Act, and by using false and misleading representations of fact regarding Dreamcatcher's software in order to promote PWLS' web-based application in violation of the Lanham Act, 15. U.S.C. §1125(a)(1)(B).

11. That PWLS and Jon Butler are engaged in a "trade or commerce" within the meaning of the Connecticut Unfair Trade Practices Act, C.G.S. §42-110a, et seq.

12. That the violations of the Connecticut Unfair Trade Practices Act entitles Dreamcatcher to and award for punitive damages and attorney's fees and costs.

13. That Jon Butler and PWLS statements to potential customers of and concerning Dreamcatcher and the Program, including representations that PWLS had not approved Dreamcatcher's program, that Dreamcatcher lacked the requisite licensing from Microsoft to market the program, that Dreamcatcher was illegally using a National Football League soundbite in its program, and that the program could not be used in conjunction with the internet, among others.

14. That these statements are false and disparaging, and that Dreamcatchers suffered damages as a result.

15. That these statements constituted "commercial advertising or promotion" and misrepresented the nature of Dreamcatcher's program in violation of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

The Defendant/Counter-Claimant proposes the following findings of fact and conclusions of law:

1.  That PWLS owns the trademarks POP WARNER (USPTO Registration No. 816322) and POP WARNER LITTLE SCHOLARS (USPTO Registration No. 2085309).

2.  That Dreamcatcher used PWLS' trademarks without a license to do so from PWLS.

3.  That Dreamcatcher's unauthorized use of PWLS' trademarks in commerce is likely to, and did cause confusion, deception or mistake as to the source, affiliation, connection or sponsorship of Dreamcatcher's goods and services.

4.  That PWLS notified Dreamcatcher on several occasions that Dreamcatcher did not have a license to use PWLS' trademarks and to cease from using them in connection with Dreamcatcher's goods and services.

5.  That despite PWLS' warnings and Dreamcatcher's lack of a license, Dreamcatcher continued to use PWLS' trademarks to solicit its product.

6.  That Dreamcatcher's unauthorized use of PWLS' trademarks constitutes an infringement under 15 U.S.C. §1114.

7.  That Dreamcatcher's unauthorized use of PWLS' trademarks constitutes a False Designation of Origin under 15 U.S.C. §1125.

8.  That Dreamcatcher's unauthorized use of PWLS' trademarks constitutes a Dilution of a Famous Mark under 15 U.S.C. §1125(c).

9.  That Dreamcatcher's unauthorized use of PWLS' trademarks constitutes Common Law Trademark Infringement.

10.    That Dreamcatcher's unauthorized use of PWLS' trademarks violates the Connecticut Unfair Trade Practices Act, C.G.S. §42-110(a) et seq.

11.    That PWLS has been damaged by Dreamcatcher's unauthorized use of PWLS' trademarks.

12.    That Dreamcatcher's conduct demonstrates intentional deception of consumers.

13.    That by reason of the foregoing, PWLS is entitled to permanent injunctive relief, declaratory relief, actual and treble damages, an equitable accounting of Dreamcatcher's profits, disgorgement of Dreamcatcher's profits, costs of litigation, attorney's fees, court costs, and statutory damages pursuant to 15 U.S.C. §1115 and §1117.

16) **TRIAL TIME:**

The parties estimate the length of trial to be four (4) days.

17) **FURTHER PROCEEDINGS:**

The Defendants have requested to take the deposition of two nonparty witnesses, whose anticipated testimony is material to Plaintiff's claims and Pop Warner's counterclaims. The first such witness is Steve Pistillo, owner of Innovative Application Developers. Dreamcatcher's Managing Partner, William Brown, testified at deposition that Mr. Pistillo wrote and developed the majority of the software program originally entitled "Keystroke Administrator" (later changed to "Administrator"), which is the subject of this litigation. Mr. Pistillo's anticipated testimony regarding the elements of this software program is therefore material to Plaintiff's claims of trade secret theft, and the defenses asserted against them.

The second witness is Richard Wilzuski, CPA, who prepared Plaintiff's business plan/economic projection as a measure of Plaintiff's alleged economic loss. Wilzuski's anticipated testimony regarding the basis for his projection is material to Plaintiff's claimed damages, the defenses asserted against same, and Defendant's damages with respect to its counterclaim.

## 18) **ELECTION**

The parties have agreed not to have this case heard by a United States Magistrate.

For the plaintiff DREAMCATCHER SOFTWARE DEVELOPMENT, LLC.:

Daniel J. Mahaney
Mahaney, Geghan & Sullivan
One Exchange Place, Sixth Floor
Waterbury, CT 06702
(203) 574-0056
CT Fed. Bar No.: CT06393

For the defendant POP WARNER LITTLE SCHOLARS, INC.:

Anthony B. Corleto
Corleto & Associates, P.C.
107 Mill Plain Road, Suite 200
Danbury, CT 06811
(203) 790-7540
Ct. Fed. Bar No: CT13520

<u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. Rule 5(b), I hereby certify that a copy of the above was mailed on October 19, 2005 to all counsel and pro se parties of record.

Anthony B. Corleto, Esq.
Corleto & Associates, PC
107 Mill Plain Road, Suite 200
Danbury, CT 06811

Daniel J. Mahaney
Mahaney, Geghan & Sullivan
One Exchange Place, Sixth Floor
Waterbury, CT 06702

Daniel J. Mahaney (CT06393)

Anthony B. Corleto (CT13520)

36